# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LORIE B.,[1] | : | Case No.  2:22-cv-2632 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Lorie B. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #8).

## I.    Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1),

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively filed her applications for Disability Insurance Benefits and for Supplemental Security Income benefits in January 2020, alleging disability due to several impairments, including posttraumatic stress disorder, irritable bowel syndrome, and anxiety. (Doc. #8-6, *PageID* #346). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Valerie A. Bawolek. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] She reached the following main conclusions:

| Step 1: | Plaintiff has not engaged in substantial gainful activity since March 12, 2018, the alleged onset date. |
|---|---|
| Step 2: | She has the following severe impairments: lumbar degenerative disc disease, asthma/mild restrictive disease, affective disorder, anxiety disorder, and posttraumatic stress disorder. |
| Step 3: | She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of "light work … except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, bend, stoop, kneel, crouch, and crawl. [Plaintiff] can frequently operate hand and foot controls. She must avoid unprotected heights, moving mechanical parts, excessive vibration, and concentrated exposure to |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

pulmonary irritants. [Plaintiff] requires a job without customer service or tandem teamwork. She requires a job with no fast pace, strict time standards, or strict production quotas."

She is unable to perform any past relevant work.

Step 5:        Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #8-2, *PageID* #s 49-58). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since March 12, 2018. *Id.* at 58.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2, *PageID* #s 46-59), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

3

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.**   **Discussion**

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinion of treating source, Dr. Kent Davis, in accordance with the regulations and caselaw.  (Doc. #9, *PageID #s* 830-37).  In response, the Commissioner maintains that the ALJ properly evaluated the opinion at issue in accordance with the revised regulations for evaluating opinion evidence, considering the supportability and consistency factors. (Doc. #11, *PageID* #s 845-53).

Since Plaintiff filed her applications after March 27, 2017, they are governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from

nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of

his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id*.

Here, Plaintiff challenges the ALJ's review of the medical opinions provided by Plaintiff's counselor, Dr. Davis. (Doc. #9, *PageID #s* 830-37).  In addition to the medical records submitted from his treatment of Plaintiff, (Doc. #8-7, *PageID* #s 461-642, 746-71), Dr. Davis authored a treating source statement where he indicated that he had been treating Plaintiff since November 6, 2017 for her diagnoses, including adjustment disorder, posttraumatic stress disorder, insomnia, and Vitamin D deficiency. (Doc. #8-7, *PageID* #647). He noted that Plaintiff had a guarded prognosis and that her diagnoses were supported clinical findings, including "anxiety, tearfulness, depression, sleeplessness, nightmares, [and] hypervigilance." *Id*. Additionally, she exhibited symptoms, including sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; motor tension; autonomic hyperactivity; apprehensive expectation; and vigilance and scanning. *Id*.

6

As a result of her impairments, Dr. Davis opined that Plaintiff was moderately limited in her ability to adapt or manage herself; mildly limited in her abilities to interact with others and to concentrate, persist, or maintain pace; but had no limitation in her ability to understand, remember, or apply information. *Id*. at 648-49. Further, while she was mildly limited in her short-term memory and remembering locations and work-like procedures, she had no limitation in her long-term memory or ability to understand and carry out very short and simple instructions. *Id*. at 649. However, her ability to understand and carry out detailed but uninvolved written oral instructions was moderately limited. *Id*. at 650. Dr. Davis also indicated that Plaintiff could "[s]ometimes, but not consistently" work appropriately with supervisors, co-workers, and the general public, but clarified that this would be "[h]ighly dependent on the specific context." *Id*. He also agreed that Plaintiff would require praise and positive reinforcement from supervisors to handle stress and emotions. *Id*. Similarly, Dr. Davis opined that Plaintiff could "[s]ometimes, but not consistently" maintain socially appropriate behavior and respond appropriately to change in work settings. *Id*. Lastly, Dr. Davis provided that Plaintiff could only maintain attention and concentration for less than thirty minutes before needing redirection or a break; would be off-task for approximately fifteen percent of the workday, and be absent about four days per month because of her impairments and/or treatment. *Id*. at 650-51.

Upon review, the ALJ found Dr. Davis's opinions to be "not persuasive[,]" explaining:

[T]he record indicates overall [Plaintiff's] condition was stable. She did report fluctuation of symptoms. However, by next visit, she noted improvement and that her condition was stable. Furthermore, [Plaintiff's] reported activities of daily living are not significantly limited as noted above. Lastly, Dr. Davis' time limits---30 minutes of concentration, off task 15%, 4 absences a month—are arbitrary without specific supporting evidence.

7

(Doc. #8-2, *PageID* #57).

The undersigned agrees that the ALJ's supportability articulation is lacking. Again, the supportability factor assesses "the objective medical evidence and supporting explanations presented by a medical source…to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Here, the only commentary that the ALJ provides in reference to the internal supportability of Dr. Davis's opinion was that his "time limits---30 minutes of concentration, off task 15%, 4 absences a month—are arbitrary and without specific supporting evidence." (Doc. #8-2, *PageID* #57). To the extent that this statement can be construed as an articulation of the ALJ's supportability analysis, the statement fails to address the many other limitations included in Dr. Davis's assessment. For example, the ALJ did not address Dr. Davis's opinions that Plaintiff is moderately limited in her ability to adapt or manage herself and in her ability to understand and carry out detailed but uninvolved written oral instructions. (Doc. #8-7, *PageID* #s 649-50). Similarly, she did not address Dr. Davis's findings that Plaintiff could "[s]ometimes, but not consistently" work appropriately with supervisors, co-workers, and the general public, that she would require praise and positive reinforcement from supervisors to handle stress and emotions, or that she could "[s]ometimes, but not consistently" maintain socially appropriate behavior and respond appropriately to change in work settings. *Id.* at 650. Without an articulation of whether the ALJ considered these opinions to be supported or not, the Court cannot trace the ALJ's path of reasoning. *See Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's… unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning."); *Stacey v. Comm'r of Soc.*

*Sec.,* 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning.") (internal quotation marks and citation omitted).

Moreover, the plain language of the regulation is unquestionably clear that an ALJ must "set forth a 'minimum level of articulation'" as to how she considered the supportability and consistency factors for a medical's source's opinion. *Warren I*, 2021 WL 860506, at *8; 20 C.F.R. § 404.1520c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions ... in your case record[.]") (emphasis added); 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.") (emphasis added). Indeed, while the regulations allow an ALJ flexibility as to whether she needs to discuss the other factors weighing on the persuasiveness of a medical opinion, they mandate that the ALJ set forth her rationale on what are deemed to be the two most important factors—supportability and consistency. *See id.* Thus, the ALJ's failure to discuss the supportability of all of Dr. Davis's opinions draws into question whether the ALJ's decision "was made pursuant to proper legal standards." *See Rabb*ers, 582 F.3d at 651.

Additionally, the Commissioner's *post hoc* rationalization of how the ALJ could have applied the factors to Dr. Davis's medical opinion based on her earlier summary of his findings does not cure this deficiency. The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered her decision and "imagine manifold ways in which the factors could have been applied to the evidence that was presented."

9

*Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Instead, it is the obligation of the ALJ "in the first instance to show his or her work*, i.e*., to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id*. As such, by not explaining how she considered the factor of supportability when evaluating Dr. Davis's medical opinion, the ALJ failed to meet the minimum levels of articulation required by the regulations, thus frustrating the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Warren I*, 2021 WL 860506, at *8.

In short, "without fuller explanation, this court cannot engage in a meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). For these reasons, Plaintiff's statement of error is well taken.

## IV.    **Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478

10

F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to a remand of this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-

step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #9) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.


September 28, 2023                                    *s/Peter B. Silvain, Jr.*
                                                     Peter B. Silvain, Jr.
                                                     United States Magistrate Judge